Good morning. May it please the Court, I am Christopher T. Van Wagner. I am retained counsel for the defendant appellant, David Wenzel. I will begin and probably limit, unless there is a delay, because of the meteor of the two issues. My issues in this case are whether or not there was probable cause in the warrant, and secondly, whether in one of two regards the warrant was overbroad. And I have suggested to the Court that there are two areas in which it is overbroad. The first is that the list of items to be sought is so extensive and so far beyond the factual basis eked out in the lay witness reporter's information that even the experience as recited in two brief paragraphs of the officer cannot enlarge it to that level. And the second challenge is whether or not the premises to be searched seem to be limited to the extent they should be under the Fourth Amendment. Now there are two kinds of overbroad or general warrants. There is the kind that says, okay, you may look for evidence of all crimes, and we know that is de facto invalid. But this one is in a different situation, and it is a situation where the officers have put some of their experience in the record, not saying much more beyond what they claim to know, and then taking four statements from the lay witness who reports seeing what appears to be a taped camera behind a vent as she was using the toilet in the residence where her... Can I talk first about your list point, videotapes, camera, hardware, film, video? Yes, Your Honor. Looking at all of that, they all, it actually strikes me as a very defined list. They all are devices on which anything captured by that camera could be recorded. Now the pornographic materials, it seems to me, is not that, but it is something... I mean, you've got to admit, if you're trying to protect the security of your house, putting a camera in the bathroom focused on the toilet isn't what you would do. So it seems to me at the probable cause level, which is certainly not preponderance or beyond a reasonable doubt, this is a fairly targeted warrant. I would agree with what you just said in regard to both the items in the list that would appear to be, as it were, collateral to the use of the camera. And I would also agree that security surveillance may not necessarily be optimally placed in a restroom, in a bathroom. Or even plausibly placed there. Well, in any event, if it's your own house, perhaps it is, because perhaps it could be a point of entry. I won't belabor the point. What I will say is that there are other things in this list, because I understand that comment, there are other things in the list that go well beyond what would normally follow from that. And you noted pornographic materials. I went a little further. There are books, materials, and manuals relating to computer operation or software. Passwords necessary to read the computer's readable records. But they need that if they're going to see if this camera from the bathroom has captured images that are now on the storage devices. They might need manuals related to this computer. Sometimes people have software that encrypts or software that otherwise would defeat efforts to search. I mean, it's not like they said, oh, and by the way, let's look for heroin, too. You know, this is about what you would get from the camera. But then if you go a little further, they've also asked to look for anything relating to text messages, internet chat, email, web camera images. The last one I understand makes sense, but it seems as if the affiant has taken that part of his background that relates more to child enticement and not to the crime specifically listed in the warrant and has gone beyond that. I think that some of these things go beyond Tinker's Everest of Chance. They go a fourth step, and I think that's too far. And I do believe as well that as a practical matter, when a warrant does go too far, then we get into line drawing. If there are things in this warrant that were not supported by probable cause, I would respectfully suggest to the court that a warrant that is overbroad or allows what I would say rummaging is not saved by a good faith exception. The case law on that is not particularly clear in this case. I also want to point out that the... Counsel, I was intrigued by the fact that your brief doesn't even mention Leone. The district court said that even if there was a shortfall of probable cause, the Leone exception prevents the use of the exclusionary rule. How are you to make a dent in that holding without discussing Leone? It was my understanding that the magistrate's holding adopted by the judge was that the probable cause, if lacking, was nonetheless salvaged by the Leone Doctrine. Right, and so you have to address that because if we agreed with every word you've said just now about overbreadth, about probable cause, the fact would remain that the first search took place under the authority of a warrant that was issued by the state judge. The police thought they had a warrant, and so you'd have to look at the things that Leone talks about to say, well, is it just so far afield that they must have lost their minds, or did the judge so far depart from the ordinary, whatever it is the phrase is, course of judicial proceedings. So there's some things that are exceptions to the good faith limitation, but you didn't talk about them. I have not, and this record does not support a Frank's man type challenge, I would get this warrant, even if it's a flawed warrant, that they are acting in good faith and can search. What I'm suggesting to the court is that the Leone good faith exception does not extend to validate otherwise general or rummaging warrants. Well, look, if you want to make that argument, that's fine, but you have to make it. Your brief doesn't make that argument. You're correct. You're supposed to make the arguments in the brief and not just make things up on your feet in oral argument, and this argument is not in your brief. It's been forfeited. I would ask for the opportunity to submit a supplemental argument in writing on that if the court feels I have forfeited because it was neither my intent nor my desire to do that. We'll see about that. I will also just briefly touch upon the areas to be searched. The warrant specifically says premises, residential premises, but describes vehicles and outbuildings and says there's several outbuildings. There's nothing in the probable cause that suggests that a warrant would, I mean, that the probable cause would show there were items in outbuildings or in vehicles on the premises. In fact, there's nothing even suggesting there were vehicles seen on the premises. So, again, I do believe it's overbroad. I will reserve the rest of my time. Okay. That's fine. Ms. Altman. Good morning, Your Honors. May it please the Court, my name is Elizabeth Altman. I represent the United States in this case. I submit that it's clear that the warrant establishes probable cause. Mr. Van Wagner did not focus his argument to the court on that issue unless the court has any questions regarding probable cause. Well, I have a related question. What's the name of the Attorney General of the United States? It's true that this came up in an earlier argument, but I wonder if you were part of the Department of Justice as a view on that critical question. I am a part of the Department of Justice. My understanding is that his name is Jefferson B. Sessions III. That's my understanding. I do not submit briefs under his name, so I guess I'm not 100 percent sure about that, but that is my fuss. Anything else? I can also tell you where you can buy beer on Sundays in Wisconsin. I was part of that argument as well. The case is about wine. I can answer that as well. What rate of interest do you pay on your debts in Wisconsin? I'm sorry, that I don't know. That would be 5 percent. The government did argue, Leon, and the government has certainly also said that the evidence from this witness of the red light and the black duct-taped up camera were enough to provide probable cause. Well, that combined with the officer's experience and the defendant's prior conviction all formed probable cause. I wasn't sure the prior conviction moved the ball too far, but the fact that the red light is on, it seems to me, would allow one to think that perhaps information was being picked up by the camera and delivered somewhere, and that would get you to storage devices, and perhaps it would get you to pornographic material as well, since it's an odd place to be recording people, I'll say. That is an argument that we made, Your Honor, and I believe it's true. In order for her to have even seen the camera, the light had to be on, indicating some sort of connection, and whether it was recording or just surveilling, either way, it's a state violation. What's the difference? Well, I guess, you know, what is the difference between recording and surveilling? Surveilling could just be live without making a recording of it somehow. There are two different statutes in the Wisconsin statutes. So surveilling would just be a picture that was being transmitted somewhere else in the house to a computer so somebody could see it in real time, but it wasn't being saved? Sure, or it's probably more likely like the people's statutes in tanning beds. It was a big thing for a while that people were watching people change clothes in tanning beds and not recording it. Did this bathroom have a shower in it, or was it just a powder room? It says powder room in all of the discussions of it, I do not know the answer to that. And also, while it may not push the ball forward, as the court indicated, a ton, the Elshire case does say that prior convictions are something that can factor into the determination of probable cause. So we think that all of those things together establish probable cause. With regard to what they were searching for, as the court indicated, certainly having a light on would seem to indicate there was some sort of recording going on. That would lead a reasonable, prudent person, especially an officer with this type of experience, to think that evidence could be found on any sort of electronic device, and that's what they searched for. That is what the warrant allowed. It wasn't overly broad. It didn't give them a license to go rummaging through the house for random things. Oh, look what we found here. They knew exactly what they were looking for. But a thumb drive could be anywhere. I wouldn't want to go on this being limited in terms of what they could look at. It seems to me they could look at practically any place in the house and find a little bitty thumb drive. Sure, absolutely. And that's the nature of computer crimes. If they were looking for long guns, obviously they couldn't open up a small box or something like that. But when you are looking for thumb drives, yes. The issue is they knew exactly what they were looking for, and so they can look for those things in any place. And then they took that information, went back, and got the second warrant, right? Correct. They did find the assaults on the first warrant, the second warrant, then they went back and looked for things that they saw in the first warrant. A blanket, medications, the child appeared to be drugged, things like that. But the actual sexual assaults were found in the first With regard, I just touched on it a moment ago, looking any place where the evidence could be found, while it was argued and briefed below, I don't believe that it was argued before this court in the defendant's brief about the areas that could be searched, the outbuildings, the vehicles, those types of things. Should the court have concerns about that, I would request the to this court and did not see that particular issue there. It was our position below, the magistrate did rule on it, that with those types of movable items, the officers did, could look anywhere. They could look in garages. They could look in vehicles. Well, the warrant says that these outbuildings, etc., are all within the curtilage, as I remember. Correct. All on the property. With the address located on the curtilage of the aforementioned property. Yes. Yes. I actually don't think we will need any supplemental briefs on any point in this case, so unless further order of the court comes, which I don't anticipate, you can assume no. Unless the court has any other questions, I would simply request the court affirm the defendant's conviction.  I can only say that I would agree that I haven't been raised in the government, nor part of the name of the Attorney General. I have nothing on me. Thank you very much. Thanks to both counsel. We will take the case under advisement.